IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IRONSHORE SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> DIALYSIS CLINIC, INC., <br><br> Defendant. | Civil Action No. <br><br> District Judge: <br> Magistrate Judge: <br><br> JURY DEMAND |

## COMPLAINT

Plaintiff Ironshore Specialty Insurance Company ("Ironshore"), by and through its counsel, files this Complaint against Defendant Dialysis Clinic, Inc. ("DCI") and avers as follows:

### NATURE OF THE CASE

1. This is an insurance coverage dispute regarding Defendant DCI's late and improper notice of an underlying action to Plaintiff Ironshore, under a policy of insurance Ironshore issued to DCI that is excess of policies of insurance issued to DCI by Lexington Insurance Company.

2. Because DCI provided late and improper notice of the underlying action to Ironshore, there is no coverage for that underlying action under the Ironshore policy.

3. Accordingly, Ironshore files this action seeking declaratory relief to confirm that it has no duty to defend or indemnify DCI in the underlying action.

### THE PARTIES

4. Plaintiff Ironshore Specialty Insurance Company is an Arizona corporation with

its principal place of business in Massachusetts.

5. Defendant Dialysis Clinic, Inc. is a Tennessee corporation with its principal place of business in Nashville, Tennessee.

## JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the dispute is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue in this district is appropriate under 28 U.S.C. § 1391(a) because Dialysis Clinic, Inc. resides in this district and is the only defendant in this action.

## FACTS

### 14-16 Lexington Policy #4773264

8. Lexington Insurance Company issued Healthcare Professional Liability – Claims Made and Healthcare General Liability – Occurrence Policy Number 4773264 to Dialysis Clinic, Inc. for the policy period from February 26, 2014 to February 26, 2016 ("14-16 Lexington Policy #4773264"). 14-16 Lexington Policy #4773264 has limits of $1,000,000 Per Claim and $3,000,000 Aggregate. 14-16 Lexington Policy #4773264 is attached hereto as Exhibit A.

9. 14-16 Lexington Policy #4773264 provides, in pertinent part, that "**[w]e** will pay those sums that you become legally obligated to pay others as damages resulting from a **medical incident** arising out of **professional services** provided by any **Insured**.… A **claim** for a **medical incident** must be first made against an **Insured** during the **policy period**…." Ex. A at Healthcare Prof'l Liab. Claims Made Coverage Part § I.

10. 14-16 Lexington Policy #4773264 provides that "[t]his insurance does not apply to any **medical incident**, **claim** or **suit** arising out of…[a]cts, errors or omissions of which an **Insured** had knowledge prior to the inception date of the **policy period**, if, as of such date, an **Insured** could reasonably foresee a **claim** might result." *Id.* § III.

11. 14-16 Lexington Policy #4773264 provides that "[i]f a **claim** or **suit** is brought against an **Insured** arising out of a **medical incident**, the **First Named Insured** must…[p]rovide **us** with written notice of the **claim** or **suit** as soon as practicable" and "[i]mmediately send **us** copies of any demands, notices, summonses, or legal papers received in connection with the **claim** or **suit**." *Id.* § VI.C.2.

12. Under 14-16 Lexington Policy #4773264, **Medical Incident** means "any act, error, or omission in the providing of or failure to provide **professional services**." *Id.* at

- 3 -
Case 3:26-cv-00032     Document 1     Filed 01/09/26     Page 3 of 12 PageID #: 3

Healthcare Professional Liability and Healthcare General Liability General Policy Provisions and Conditions § I.N.

13. Under 14-16 Lexington Policy #4773264, **Professional Services**, in turn, means, in pertinent part, "[m]edical, surgical, dental, nursing or other health care services including but not limited to…the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances…." *Id.* § I.V.

14. Dialysis Clinic, Inc. is an **Insured** under 14-16 Lexington Policy #4773264. *Id.* at Healthcare Professional Liability – Claims Made and Healthcare General Liability – Occurrence Declarations Item 1.

15. Under 14-16 Lexington Policy #4773264, **Insured** also includes, in pertinent part, "**[y]our employees**…but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business." *Id.* at Healthcare Prof'l Liab. Claims Made Coverage Part § II.F.

16. Under 14-16 Lexington Policy #4773264, **Claim** means "a written demand against an insured for monetary damages, including a **suit**." *Id.* at Healthcare Prof'l Liab. & Healthcare Gen. Liab. Gen. Policy Provisions and Conditions § I.E.

17. Under 14-16 Lexington Policy #4773264, **suit** means "a civil action in which damages are alleged because of an **occurrence**, **claim**, **medical incident**, **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies." *Id.* § I.X.

18. 14-16 Lexington Policy #4773264 further provides, in pertinent part, that "[t]his insurance does not apply to any **medical incident**, **claim** or **suit** arising out of" "[a]ny claim

- 4 -
Case 3:26-cv-00032    Document 1    Filed 01/09/26    Page 4 of 12 PageID #: 4

against any physician." *Id.* at Healthcare Prof'l Liab. Claims Made Coverage Part § III & Endorsements Nos. 5, 6.

### 14-16 Lexington Policy #6797653

19. Lexington Insurance Company issued Excess Healthcare Professional Liability – Claims Made and Healthcare Umbrella Liability – Occurrence Policy Number 6797653 to The Dialysis Clinic, Inc. for the policy period from February 26, 2014 to February 26, 2016 ("14-16 Lexington Policy #6797653"). 14-16 Lexington Policy #6797653 has limits of $10,000,000 Each Occurrence and $10,000,000 Aggregate excess of a Self-Insured Retention. 14-16 Lexington Policy #6797653 is attached hereto as Exhibit B.

20. 14-16 Lexington Policy #6797653 provides, in pertinent part, that "**[w]e** will pay those sums in excess of the Retained Limit…that **you** become legally obligated to pay others as damages resulting from a **medical incident** arising out of **professional services** provided by any **Insured**.…A **claim** for a **medical incident** must be first made against an **Insured** during the **policy period**…." Ex. B at Excess Healthcare Prof'l Liab. Claims Made Coverage Part § I.

21. 14-16 Lexington Policy #6797653 provides that "[t]his insurance does not apply to any liability arising out of…[a]cts, errors or omissions of which an **Insured** had knowledge prior to the inception date of the **policy period**, if, as of such date, an **Insured** could reasonably foresee a **claim** might result." *Id.* § III.

22. 14-16 Lexington Policy #6797653 provides that "[i]f a **claim** or **suit** is brought against an **Insured** arising out of a **medical incident**, the **First Named Insured** must…[p]rovide **us** with written notice of the **claim** or **suit**…as soon as practicable" and "[i]mmediately send **us** copies of any demands, notices, summonses, or legal papers received in connection with the **claim** or **suit**." *Id.* § V.C.2.

23. Under 14-16 Lexington Policy #6797653, **Medical Incident** means "any act, error, or omission in the providing of or failure to provide **professional services**." *Id.* at Excess Healthcare Prof'l Liab. & Healthcare Umbrella Liab. Policy Gen. Policy Provisions & Conditions § I.J.

24. Under 14-16 Lexington Policy #6797653, **Professional Services**, in turn, means, in pertinent part, "[m]edical, surgical, dental, nursing or other health care services including but not limited to…the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances…." *Id.* § I.O.

25. Dialysis Clinic, Inc. is an **Insured** under 14-16 Lexington Policy #6797653. *Id.* at Excess Healthcare Professional Liability – Claims Made and Healthcare Umbrella Liability – Occurrence Declarations Item 1.

26. Under 14-16 Lexington Policy #6797653, **Insured** also includes, in pertinent part, "**[y]our employees**…but only for acts within the scope of their employment by **you** or while performing duties related to the conduct of **your** business." *Id.* at Excess Healthcare Prof'l Liab. Claims Made Coverage Part § II.G.

27. Under 14-16 Lexington Policy #6797653, **Claim** means "written demand against an **insured** for monetary damages, including a **suit**." *Id.* § I.C.

28. Under 14-16 Lexington Policy #6797653, **suit** means "a civil action in which damages are alleged because of an **occurrence**, **claim**, **medical incident**, **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies." *Id.* § I.P.

### 15-16 Ironshore Policy

29. Ironshore Specialty Insurance Company issued claims-made Follow Form Excess Policy Number 000157705 to "Dialysis Clinic, Inc.; DCI Donor Services, Inc. and all

subsidiaries" for the policy period from February 26, 2015 to February 26, 2016 (the "15-16 Ironshore Policy"). The 15-16 Ironshore Policy has limits of $10,000,000 Per Claim and $10,000,000 Aggregate, excess of **Underlying Insurance**. The 15-16 Ironshore Policy is attached hereto as Exhibit C.

30. The 15-16 Ironshore Policy provides, in pertinent part, that "subject to all of the terms, conditions, limitations and endorsements of this Policy, the **Insurer** agrees to provide the **Insured** with insurance excess of the **Underlying Insurance**, and in conformance with the terms, conditions, limitations, exclusions, definitions and endorsements of the **Primary Policy**, except as otherwise stated in this Policy." Ex C. § I.

31. Under the 15-16 Ironshore Policy, **Insured** means "the persons and organizations insured under the **Primary Policy**." *Id.* § III(B).

32. Under the 15-16 Ironshore Policy, **Primary Policy** means "the policy or policies scheduled as such in ITEM 4 of the Declarations and any policy renewing or replacing it/them." *Id.* § III(D).

33. Under "**Primary Policy**," the 15-16 Ironshore Policy lists, among others, Lexington Insurance Co. Policy Number 6797653, which has limits of $10,000,000 Each Occurrence and $10,000,000 Aggregate excess of a Self-Insured Retention, and Lexington Insurance Company Policy Number 4773264, which has limits of $1,000,000 Per Claim and $3,000,000 Aggregate. *Id.* at Declarations ITEM 4(a).

34. The 15-16 Ironshore Policy provides:

> As a condition precedent to any right to payment of the **Insured** under this Policy, the **Insured** shall give the **Insurer** written notice of: (1) any claim under the **Underlying Insurance** as soon as possible, but in no event later than required for reporting of claims under the **Primary Policy**; *provided*, that the **Insured** shall give the **Insurer** notice of any claim involving professional liability

> coverage as soon as practicable, but in no event later than ninety (90) days after the expiration of the **Policy Period**; and (2) any matter, including a Notice of Circumstance, with respect to which notice has been provided under any **Underlying Insurance**; *provided*, that the Insured shall give the **Insurer** notice of any Notice of Circumstance involving professional liability coverage as soon as practicable, but in no event later than the expiration of the **Policy Period**.

*Id.* § VI.

35. The 15-16 Ironshore Policy defines **Underlying Insurance** to mean "the self-insured retention(s), **Primary Policy** and all other policies which comprise the per claim and aggregate limit(s) of liability described in ITEM 5 of the Declarations, and any policies renewing or replacing them." *Id.* § III(F).

36. With respect to notices required under the policy, the 15-16 Ironshore Policy provides that "such notices shall be delivered to the Vice President of Claims, as set forth in ITEM 6 of the Declarations. ***Notice to any other address or department of the Insurer shall not satisfy the requirements of this Section VI.***" *Id.* § VI.

**The Underlying Action**

37. By writ of summons dated June 5, 2015, Underlying Plaintiffs Alyssa and William McLaughlin (the "McLaughlins") commenced a lawsuit (the "Underlying Action") against Amit Nahata, M.D.; Kathryn Simons, M.D.; Anne F. Josiah, M.D.; Thomas Pirosko, M.D.; Jessie Ganjoo, M.D.; Ashley Berkley, D.O.; The Washington Hospital ("TWH"); and Washington Health System Washington Hospital in the Court of Common Pleas of Washington County, Pennsylvania (collectively, "Initial Underlying Defendants"). A copy of the writ of summons is attached hereto as Exhibit D.

38. On or about September 23, 2015, Underlying Plaintiffs filed their Complaint in the Underlying Action against the Initial Underlying Defendants. A copy of the Complaint is

- 8 -

Case 3:26-cv-00032     Document 1     Filed 01/09/26     Page 8 of 12 PageID #: 8

attached hereto as Exhibit E.

39. On or about July 5, 2016, Underlying Plaintiffs filed a First Amended Complaint in the Underlying Action against the Initial Underlying Defendants. A copy of the First Amended Complaint is attached hereto as Exhibit F.

40. On September 6, 2016, in the Underlying Action, Dr. Berkley filed a Joinder Complaint against DCI, pleading "claims for indemnification and/or contribution" against DCI. A copy of the Joinder Complaint is attached hereto as Exhibit G.

41. On November 14, 2017, Patricia Priola of Willis Towers Watson, DCI's insurance broker, sent a Loss Notification to NY1.USClaims@ironshore.com titled "Insured: Dialysis Clinics, Inc., Plaintiff: McLaughlin, Alyssa." A copy of the Loss Notification is attached hereto as Exhibit H.

42. The Loss Notification was sent more than "(90) days after the expiration of the **Policy Period**" for the 15-16 Ironshore Policy – in fact, more than *twenty* months after the expiration of the 15-16 Ironshore Policy's policy period.

43. The Loss Notification was sent more than *fourteen* months after Dr. Berkley filed her Joinder Complaint against DCI.

44. On or about April 13, 2018, TWH filed an Amended Crossclaim against DCI stating that it "makes claim for indemnification and contribution from and against Amit Nahata, MD, and Jessie Ganjoo, MD and further makes claim for indemnification, contribution, *respondeat superior*, vicarious liability and actual agency from and against DCI for any sums that may be recovered" by the McLaughlins in the Underlying Action.

45. On March 13, 2019, Myrna Nieves, Senior Claims Specialist at Ironshore, sent a communication to DCI stating that "Ironshore reserves its rights with respect to the claims

against DCI" and that "[e]ven if Dr. Berkley were an Insured under the Policy, she failed to provide timely notice of the Action, which is a condition precedent to coverage."

46. On October 11, 2019, a verdict was entered in favor of the McLaughlins against Drs. Nahata and Ganjoo in the Underlying Action. The verdict slip stated that it was found that Drs. Nahata and Ganjoo were the ostensible agents of TWH and that the total amount of damages was $15,054,950.00.

47. The McLaughlins were subsequently awarded delay damages, and as a result the verdict increased to $17,263,159.33.

48. TWH alleges that Drs. Nahata and Ganjoo assigned to TWH "any rights and interests, legal or otherwise, [Drs. Nahata and Ganjoo] have or potentially have against anyone or any other entity as a result of the Verdict…or any resultant judgments resulting from the [Underlying] Action."

49. In a letter dated September 15, 2025, Jack Thompson of DCI wrote to Ms. Nieves regarding the Underlying Action, stating that he was writing "to ensure Ironshore's notice of its potential and likely involvement in the above-mentioned matter."

50. However, there is no coverage for DCI for the Underlying Action under the 15-16 Ironshore Policy.

51. As a result, Ironshore brings this action, seeking a declaratory judgment that Ironshore has no obligation to defend or indemnify DCI in the Underlying Action under the 15-16 Ironshore Policy.

**COUNT I**
**DECLARATORY JUDGMENT**
**(Late Notice)**

52. Ironshore incorporates by reference all of the foregoing paragraphs of this Complaint as if set forth at length herein.

53. Under 28 U.S.C. § 2201, this court has the power to declare the rights and obligations of parties under the Policy because an actual controversy exists between Ironshore and DCI.

54. DCI did not give Ironshore written notice to the Vice President of Claims, as set forth in ITEM 6 of the Declarations of the 15-16 Ironshore Policy, of any claim under the **Underlying Insurance** in connection with the Underlying Action "as soon as possible, but in no event later than required for reporting of claims under the **Primary Policy**."

55. DCI did not give Ironshore written notice to the Vice President of Claims, as set forth in ITEM 6 of the Declarations of the 15-16 Ironshore Policy, of any claim involving professional liability coverage in connection with the Underlying Action "as soon as practicable, but in no event later than ninety (90) days after the expiration of the **Policy Period**."

56. Those notice requirements are "condition[s] precedent to any right to payment of the **Insured**" under the 15-16 Ironshore Policy.

57. Therefore, because DCI provided late notice, Ironshore has no duty to defend or indemnify DCI in connection with the Underlying Action.

**WHEREFORE**, Ironshore requests that judgment be entered in its favor and against DCI and asks this Court to:

    **A.** Determine, adjudicate and declare that Ironshore has no duty to defend or indemnify DCI in connection with the Underlying Action under the 15-16 Ironshore Policy; and

    **B.** Grant to Ironshore any such other and further relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ironshore hereby demands a trial by jury on all issues so triable.

Dated: January 9, 2026

**WILSON ELSER**

*/s/ James M. Burd*
James M. Burd (TN 034940, KY 84382, OH 96197)
Jamie K. Durrett (TN 026278, AL 8796-M41D, DC 985151, FL 52064, NC 58893)
1801 West End Avenue, Suite 920
Nashville, TN 37203
Telephone: (615) 263-1230
james.burd@wilsonelser.com/
jamie.durrett@wilsonelser.com

**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**

Ronald P. Schiller (PA 41357, NY 2877090)
(*pro hac vice application forthcoming*)
Michael R. Carlson (PA 89937, NJ 032122004)
(*pro hac vice application forthcoming*)
Thomas N. Brown (PA 321008) (*pro hac vice application forthcoming*)
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
Telephone: (215) 568-6200
rschiller@hangley.com/mcarlson@hangley.com/
tbrown@hangley.com

*Attorneys for Plaintiff*
*Ironshore Specialty Insurance Company*